IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SANDRA J. MAYFIELD, Ph.D, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number CIV-08-581-C |
| ) | |
| (1) STATE OF OKLAHOMA, ex rel., ) | |
| REGIONAL UNIVERSITY SYSTEM OF ) | |
| OKLAHOMA, a constitutional agency; ) | |
| and (2) UNIVERSITY OF CENTRAL ) | |
| OKLAHOMA, a constitutional agency, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On September 8, 2008, Plaintiff filed a second amended complaint against Defendants Regional University System of Oklahoma (RUSO) and University of Central Oklahoma (UCO) alleging claims of gender discrimination pursuant to Title VII, 42 U.S.C. § 2000e et seq., and the Oklahoma Anti-Discrimination Act, 25 Okla. Stat. 25 § 1101 et seq., as well as a violation of the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). Defendants filed the present Motion for Summary Judgment.

BACKGROUND

Plaintiff, who is female, is a tenured professor of English at UCO and also serves as the Director of the Women's Studies Minor and the advisor of the English Honor Society. The Women's Studies Minor is housed within the English Department, which in turn is housed within the College of Liberal Arts. Plaintiff reports to and is supervised by the Chair of the English Department and the Dean of the College of Liberal Arts, and utilizes the administrative

support of the English Department. Plaintiff's duties as director of the Women's Studies Minor include meeting with professors of Women's Studies courses, assisting with the development of new courses, advising students in the program, determining course substitutions, meeting with various administrative personnel, and organizing and attending various special events related to the program. Plaintiff does not receive additional compensation or release time for serving as Director of the Women's Studies Minor.

Dr. Brett Sharp, who is male, is a professor of Political Science and serves as the Director of the Leadership Studies Minor as well as the Advisor of the Public Administration Major and Minor. The Leadership Studies Minor is not housed within any academic unit. Dr. Sharp therefore lacks the administrative support of a Chair or a Dean, and instead reports to the Vice Provost of the Office of Academic Affairs. Dr. Sharp's duties as Director of the Leadership Studies Minor include recruiting and hiring professors to teach Leadership Studies courses, evaluating the professors' performance, monitoring and maintaining course evaluations, developing courses and course plans, formulating class schedules, scheduling class locations and times, designing curriculum, setting up and maintaining an annual program assessment plan, advising students, and approving course substitutions. Dr. Sharp was given the choice between additional compensation or release time for serving as the Director of Leadership Studies Minor, and Dr. Sharp chose additional compensation.

Plaintiff contends that she is paid less than Dr. Sharp because she is female. She argues that they both perform the same duties and therefore should receive the same compensation for serving as directors of minor programs. When Plaintiff requested such additional

compensation or release time, she was told that the department did not have enough money, which Plaintiff claims is merely pretextual. Plaintiff filed an EEOC charge on March 19, 2007, against UCO and a letter notifying her of her right to sue was sent on March 5, 2008. Plaintiff subsequently filed her original complaint on June 4, 2008.

Defendants filed the present motion, arguing that they are entitled to summary judgment on all of Plaintiff's claims. According to Defendants, because the Leadership Studies Minor is not housed within any academic department, Dr. Brett Sharp performs additional duties that are not required of Plaintiff, thereby entitling him to increased pay or release time. In addition, Defendants claim that RUSO is not Plaintiff's employer and that her claims against it are therefore improper. Also, Defendants argue that because RUSO was not named in Plaintiff's EEOC charge, her Title VII claim against it must be denied. Finally, Defendants contend that Plaintiff untimely added UCO to her lawsuit.

## STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the litigation under applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine only if it is such that a reasonable jury could find in favor of the nonmoving party. Id. The moving party bears the burden of demonstrating the lack of a genuine issue about any material facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once this burden is met, the nonmoving party must then respond and introduce

specific facts demonstrating a genuine issue of material fact. Fed. R. Civ. P. 56(e)(2).  When deciding a motion for summary judgment, the court may only consider admissible evidence and must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" Scott v. Harris, 550 U.S. 372, 378 (2007) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995).

The Supreme Court noted that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Court went on to explain that, in this situation, there could be no genuine issue of material fact because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

## DISCUSSION

**A.  Defendant RUSO's Status as Employer Under Title VII and Equal Pay Act**

Initially, Defendant RUSO, which is the Board of Regents for UCO, contends that it is not Plaintiff's employer for purposes of Title VII and the Equal Pay Act.[1]  Whether an entity

---

[1] Defendant RUSO also contends that it does not qualify as Plaintiff's employer pursuant to the OADA.  However, Plaintiff indicates in her response that she wishes to dismiss her OADA claim.  The Court accepts this dismissal and finds it unnecessary to address this portion of Defendants' argument.

qualifies as an employer is generally considered a factual question to be resolved by the jury. Bristol v. Bd. of County Comm'rs of County of Clear Creek, 312 F.3d 1213, 1221 (10th Cir. 2002). Courts use a variety of different tests to determine what entity constitutes an employer for purposes of Title VII. See id. at 1322-24; Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1069-71 (10th Cir. 1998). While the Tenth Circuit has declined to adopt one test to govern this analysis, it notes that the trend is in favor of adopting the single employer test. Lockard, 162 F.3d at 1070.

Under this test, courts consider four separate factors to determine whether two entities in fact constitute a single employer: "(1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." Sandoval v. City of Boulder, Colo., 388 F.3d 1312, 1322 (10th Cir. 2004). The third factor is recognized as the most important in this analysis, and courts focus almost exclusively on this one issue. Id.; Bristol, 312 F.3d at 1220; Skidmore v. Precision Printing & Packaging, Inc., 188 F.3d 606, 617 (5th Cir. 1999). The Court finds that Plaintiff has presented sufficient evidence to permit a jury to determine that RUSO is her employer pursuant to this test. Portions of the RUSO Policy Manual indicate that, while the president of UCO is "solely responsible for employment, discipline and termination of all faculty," the president must report to the Board on all such matters. (See Defs.' Mot., Dkt. No. 32, Ex. 13.) Additionally, the manual states:

> The Board of Regents has the supervision, management and control of the senior regional universities under its jurisdiction and it has the following additional powers and duties . . . :

a)   Adopt such rules and regulations as it deems necessary to govern each of the institutions under its jursidction.

b)   Employ and fix the compensation and duties of such personnel as it deems necessary . . .

(Pl.'s Br., Dkt. No. 38, Ex. 6.) This evidence could support a jury finding that RUSO and UCO constitute a single employer, and therefore summary judgment is inappropriate on this basis with respect to Plaintiff's Title VII claim.

The EPA provides that "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). According to the Supreme Court, the inquiry should focus on economic realities rather than on technical concepts. Goldberg v. Whitaker House Co-op, Inc., 366 U.S. 28, 33 (1961). The Court can find no Tenth Circuit authority discussing the issue of joint employers in the context of EPA claims. Other circuits which have addressed the issue focused overwhelmingly on whether both putative employers exercised control over the terms and conditions of employment, in addition to a variety of other factors. See Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 142-145 (2d Cir. 2008); Reyes v. Remington Hybrid Seed Co., 495 F.3d 403, 408 (7th Cir. 2007); Torres-Lopez v. May, 111 F.3d 633, 642-644 (9th Cir. 1997); Antenor v. D & S Farms, 88 F.3d 925, 932-938 (11th Cir. 1996). For the same reasons as discussed above in the context of Plaintiff's Title VII claim, the Court finds that a question of fact exists with respect to whether Defendant RUSO is Plaintiff's employer under the EPA and, therefore, summary judgment is inappropriate on this basis.

**B. Failure to Exhaust Administrative Remedies**

Defendants contend that, because Plaintiff did not name Defendant RUSO in her EEOC claim, she has not exhausted her administrative remedies against that entity. Generally, plaintiffs may only sue those entities named in the EEOC charge. See 42 U.S.C. § 2000e-5(f)(1); Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1185 (10th Cir. 1999). However, "a Title VII action may proceed against a defendant not named in the EEOC charge when 'there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge.'" Id. (quoting Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991)).

Courts consider four factors in order to determine whether there exists an identity of interest:

> (1) whether the role of the unnamed party could have been ascertained at the time of the filing of the EEOC complaint through reasonable effort by the complainant; (2) whether the interests of a named party are so similar to the unnamed party's that it would be unnecessary to include the unnamed party in the EEOC proceedings for the purpose of obtaining voluntary conciliation and compliance; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Id. at n.9. However, if two entities are found to be a single employer, then it is unnecessary to consider the above factors. Id.

The Court finds that there is a sufficient identity of interest between RUSO and UCO to permit Plaintiff to bring a Title VII claim against RUSO even though it was not named in her EEOC charge. While Plaintiff could have ascertained RUSO's identity and role at the time she filed the EEOC charge, it is clear that both entities have the same interest in voluntary

conciliation and compliance. Additionally, it is clear that RUSO's absence in the EEOC charge did not result in any actual prejudice. Therefore, Plaintiff's Title VII claim against RUSO is not barred.

**C. Failure to Timely Sue Defendant UCO**

Next, Defendants contend that Plaintiff's claims against UCO must fail because she did not properly name that entity in her complaint. Plaintiffs have ninety days from the date they receive notice that their EEOC charges were dismissed to file a complaint in federal court. 42 U.S.C. § 2000e-5(f)(1). The EEOC mailed such notice to Plaintiff on March 5, 2008. She commenced the present action on June 4, 2008, and both parties agree that the original complaint was timely filed. However, Plaintiff named only RUSO as a party to the initial complaint and did not add Defendant UCO until she filed her second amended complaint on September 8, 2008. Plaintiff's inclusion of UCO as a party is therefore untimely unless the amended complaint relates back to the date the initial complaint was filed.

An amendment naming a new party relates back to the date of the original pleading if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading" and

> (C)   . . . if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i)   received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii)   knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B) and (C). The claims asserted against UCO clearly arose out of the same conduct, transaction, or occurrence that was set forth in Plaintiff's original complaint. Additionally, UCO received notice of the action within the 120-day period set forth in Rule 4(m) and will not suffer any prejudice due to its late inclusion. Finally, Defendants' counsel sent a letter to Plaintiff's counsel on July 16, 2008, stating that UCO, not RUSO, was the proper party for Plaintiff to sue. Accordingly, the Court finds that Plaintiff's second amended complaint relates back to the date of the original pleading and therefore Plaintiff timely added Defendant UCO as a party to this action.

**D. Equal Pay Act Claim**

In order for Plaintiff to prevail on her EPA claim at the summary judgment stage, she must demonstrate that "'(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances.'" Sprague v. Thorn Ams., Inc., 129 F.3d 1355, 1364 (10th Cir. 1997) (citation omitted).[2] Courts do not construe the "equal work" requirement broadly, and "failure to furnish equal pay for 'comparable work' or 'like jobs' is not actionable." Id. Defendants contend that Plaintiff fails to satisfy the first and second elements because Dr. Sharp performs a variety of duties that Plaintiff does not and the lack of

---

[2] All that Plaintiff must do to survive summary judgment is demonstrate her prima facie case. Once this is accomplished, Defendants then bear the burden of persuading the jury that the reasons for the pay disparity are deemed permissible by the EPA. Sprague, 129 F.3d at 1364.

an administrative support structure for the Leadership Studies Minor means that their work environments are significantly different.

In support of their contentions, Defendants submitted an affidavit from Dr. Sharp along with Plaintiff's deposition testimony regarding the job duties that each individual performs. These documents indicate that, while Plaintiff and Dr. Sharp perform many of the same duties, Dr. Sharp is charged with additional responsibilities such as recruiting and hiring professors to teach minor courses, evaluating professor performance, monitoring course evaluations, and setting up and maintaining an annual program assessment plan. (See Defs.' Mot., Dkt. No. 32, Ex. 5.)  Plaintiff contends that she and Dr. Sharp perform similar and comparable core job duties.  They both work with faculty in developing courses, they advise students in a variety of different ways, and they both plan special activities and participate in conferences and special programs.  (See Pl.'s Resp., Dkt. No. 38, Ex. 1 at 107.)  Plaintiff offers no argument refuting the specific distinctions between the positions as identified by Defendants, but instead simply contends that Dr. Sharp is not a chair of a department and therefore should not be paid as though he were.  While Plaintiff and Dr. Sharp may perform similar and comparable job duties, as Plaintiff contends, this is insufficient to support her allegations of wage discrimination.  Because Plaintiff cannot satisfy the first prong of her prima facie case, the Court declines to address Defendants' arguments regarding the second prong.  Defendants are entitled to summary judgment on this claim.

**E. Plaintiff's Title VII Gender Discrimination Claim**[3]

According to the Tenth Circuit,

"a female Title VII plaintiff establishes a *prima facie* case of sex discrimination by showing that she occupies a job similar to that of higher paid males." "Once a *prima facie* case is established, the defendant must articulate a 'legitimate, non-discriminatory reason for the pay disparity.' This burden is 'exceedingly light'; the defendant must merely proffer non-gender based reasons, not prove them." Once the defendant advances such a justification, the plaintiff must show that the defendant, regardless of the proffered reasons, intentionally discriminated against her. That is, "the plaintiff must show that 'a discriminatory reason more likely than not motivated [the employer] to pay her less.'"

Sprague, 129 F.3d at 1363 (internal citations omitted). There is no requirement that Plaintiff prove that she and Dr. Sharp perform equal work, as is required by the EPA. Id. at 1362.

From the evidence submitted by the parties, it is clear that a jury could find that Plaintiff occupies a job similar to that of Dr. Sharp, who is a higher paid male. Therefore, Plaintiff has met the burden of demonstrating her prima facie case. Defendants contend, however, that the reason for the pay disparity is that Dr. Sharp performs more job duties than does Plaintiff and that he lacks the administrative support system that Plaintiff enjoys from the English Department. Because these are legitimate, non-discriminatory reasons for the pay disparity, the burden shifts back to Plaintiff to demonstrate that Defendants intentionally discriminated against her.

---

[3] Defendants' motion raises the argument that Plaintiff may not pursue any claims for hostile work environment since such a claim was not included in her EEOC charge. Plaintiff's response acknowledges, however, that she does not intend to raise a separate claim for hostile work environment, but rather that such evidence will be used solely to support her claims of gender discrimination, thereby obviating any need to consider Defendants' contentions.

Plaintiff contends that she has suffered gender discrimination through her advocacy for the Women's Studies Program. According to Plaintiff, she has attempted numerous times to have the program declared a major, but the administration has consistently denied her request, with the Dean of the Liberal Arts College asking Plaintiff "what can a student do with a major in women's studies?" Plaintiff further contends that she suffered discrimination at the hands of the current chair of the English Department because he is upset that, several years ago, Plaintiff was appointed the department chair instead of him. Finally, Plaintiff argues that the key difference between Dr. Sharp and herself is gender. The Court finds that this evidence is insufficient to raise a genuine question of fact regarding whether Defendants intentionally discriminated against Plaintiff. While it may demonstrate that Defendants do not value the Women's Studies Program as highly as other minor programs, it is not enough to preclude summary judgment on this claim.

### F. Plaintiff's OADA Claim

Plaintiff's response indicates that she wishes to voluntarily dismiss her state law claim of discrimination. Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that, after the opposing party has filed a motion for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Whether to accept such a voluntary dismissal is within the discretion of the court. Brown v. Baeke, 413 F.3d 1121, 1123 (10th Cir. 2005). The important inquiry is whether the party opposing the motion to dismiss would suffer legal prejudice should the motion be granted. Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 357 (10th Cir. 1996) (citing Clark v. Tansy, 13 F.3d

1407, 1411 (10th Cir. 1993)).  There is no prejudice simply because a second lawsuit may be filed against the defendant.  Baeke, 413 F.3d at 1124.  Instead, the district court should consider a variety of factors, including "'the opposing party's effort and expense in preparing for trial,' 'excessive delay and lack of diligence on the part of the movant,' and 'insufficient explanation of the need for a dismissal.'"  Phillips USA, Inc., 77 F.3d at 358 (internal citations omitted).  Courts should also consider the current stage of the litigation, such as whether a motion for summary judgment has been filed by the defendant.  Pace v. S. Express Co., 409 F.2d 331, 334 (7th Cir. 1969); see also Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997).  These factors are not exclusive, nor must they all be resolved in favor of one party.  Phillips USA, Inc., 77 F.3d at 358.  While Plaintiff did not indicate why she wishes to dismiss this claim, the Court notes that Defendants offered no objection to such a dismissal.  Therefore, the Court finds it appropriate to permit Plaintiff to dismiss her OADA claim.

## CONCLUSION

For the reasons set forth herein, Plaintiff's OADA claim is DISMISSED.  Additionally, the Court finds that the facts, when viewed in the light most favorable to Plaintiff, indicate that Plaintiff cannot make out a violation of Title VII or the Equal Pay Act.  Accordingly, Defendants' Motion for Summary Judgment (Dkt. No. 32) is GRANTED.  Judgment will be entered accordingly.  All pending motions are stricken as moot.

IT IS SO ORDERED this 30th day of April 2009.

ROBIN J. CAUTHRON
United States District Judge